UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHAEL NUCKOLLS,

    PLAINTIFF,

v.

PROCOLLECT, INC.,

    DEFENDANT.

Civil Case No.: 3:24-cv-1253

<u>JURY DEMAND</u>

## COMPLAINT

Plaintiff Michael Nuckolls ("Plaintiff" or "Mr. Nuckolls"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendant ProCollect, Inc. ("ProCollect" or "Defendant") as follows:

## PRELIMINARY STATEMENT

1. This is an action for an actual, statutory, and punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA") and 15 U.S.C. §§ 1692, *et seq.* ("Fair Debt Collection Practices Act" or "FDCPA").

2. When a consumer, like Plaintiff, disputes the accuracy of information through a consumer reporting agency ("CRA"), those disputes are transmitted to the party furnishing the information ("furnisher"), here ProCollect.

3. Today, furnishers, have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2(b). The duties on furnishers under the FCRA with private causes of action were enacted in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

1

4. The FCRA demands that the furnisher conduct a reasonable investigation of the consumer's dispute and correct or delete information the furnisher learns is inaccurate or cannot otherwise verify after receipt of a dispute from a CRA.

5. When such dispute investigations are ongoing and credit reporting of the subject account is also taking place, the furnisher of information must note that the consumer has disputed the information when transmitting account data to CRAs.

6. Under the FCRA, the furnisher must satisfy five duties after receipt of notice of a consumer dispute from a CRA. 15 U.S.C. § 1681s-2(b)(1)(A-E). *See also Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016); *Boggio v. USAA Federal Savings Bank*, 696 F.3d 611 (6th Cir. 2012); *Johnson v. MBNA Am. Bank, NA,* 357 F.3d 426 (4th Cir. 2004); *Van Veen v. Equifax Info.,* 844 F.Supp.2d 599, 605 (E.D. Pa. 2012) (applying *Johnson*).

7. ProCollect violated the FCRA, § 1681s-2(b), when it received Plaintiff's disputes from a CRA and failed to reasonably investigate those disputes and consider all relevant information supplied by the CRA in connection with any FCRA investigation.

8. Instead, full discovery will show all ProCollect did was consult its own records about the fraudulent account and confirm to the CRAs the inaccurate information it was already reporting.

9. Similarly, the FDCPA is a consumer protection statute and its stated purpose to protect purported consumer debtors from debt collectors' unfair and unconscionable debt collection tactics.

10. The FDCPA was enacted to protect all consumers from debt collectors who seek to collect debts through illegal means and who engage in false and misleading, unfair, and deceptive practices in the process of attempting to collect a debt.

11. Notwithstanding federal law, a cursory review of the Pacer docket reveals hundreds of consumer lawsuits filed against ProCollect wherein a claim was made against it under the FCRA or FDCPA, or both.

12. Upon information and belief, ProCollect maintains records concerning the number and types of lawsuits filed against it.

13. In the last three years, the Consumer Financial Protection Bureau has received almost 200 complaints from consumers alleging ProCollect attempted to collect debt from them for accounts opened due to identity theft.[1]

14. ProCollect has also received almost 600 complaints from the Better Business Bureau ("BBB") in the last three years and almost 300 complaints in the last 12 months alone.[2]

15. Many of the published complaints made to the BBB are like Plaintiff's experience with ProCollect.[3] For example:

**04/07/2024[4]**

ProCollect is attempting to collect debt from me on behalf of an apartment complex that I have never resided at, or (sic) had any business with. I believe that this debt belongs to a different person with my same name, or it is fraudulent.

---

[1] https://www.consumerfinance.gov/data-research/consumer-complaints/search/?date_received_max=2024-05-07&date_received_min=2021-01-01&issue=Attempts%20to%20collect%20debt%20not%20owed•Debt%20was%20result%20of%20identity%20theft&page=1&searchField=all&searchText=procollect&size=25&sort=created_date_desc&tab=List  Last visited May 22, 2024.

[2] https://www.bbb.org/us/tx/dallas/profile/collections-agencies/procollect-inc-0875-19001914 Last visited May 22, 2024.

[3] According to the BBB, "Due to the volume of complaints filed against [ProCollect], BBB only publishes the details for 30% of the total complaints filed." https://www.bbb.org/us/tx/dallas/profile/collections-agencies/procollect-inc-0875-19001914/complaints?page=1 Last visited May 22, 2024.

[4] https://www.bbb.org/us/tx/dallas/profile/collections-agencies/procollect-inc-0875-19001914/complaints?page=1 Last visited May 22, 2024.

**3/8/2024[5]**

The Confluence building in ****** sent a debt collection to Pro Collect for a person with my same name but different Social security number. I have never lived at the Confluence and neither the Confluence nor ProCollect can show me a contract in which I signed. I have explained this to Pro Collect, have filed a police report per their request, and they still have me listed as the holder of this debt for $6000. Accnt number ***************. *************** or ***** is also listed on the rent agreement but I do not know this person.

**1/14/2024[6]**

On 8/21/2023 I Mailed in letters on 8/21/2023, 9/30/2023, 11/13/2023. Requesting for this account to be deleted from my credit report. I have not received any letter with and update. I advise I have no knowledge of this account. 15 US Code ******** a consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt. It has been 30 days and you are in violation of this law because I am a victim of Identity theft!! Please delete these items Immediately! These accounts should not be furnished on my consumer report as they are in violation!!! Under, 15 U.S.Code ****b- Permissible purposes of (a) In general subject to section any consumer reporting agency may furnish a consumer report under the following circumstances and no other: (2) In accordance with written instructions of the consumer to whom it relates. I never gave any consumer reporting agency a written instruction to report anything on my credit report which violates my rights. Pro Collect account: ***********.

**1/12/2024[7]**

I have identified certain transactions on my consumer report to be a result of identity theft. I confirm that I did not provide written permission or instructions for the identified transactions to be reported on my consumer report. Therefore, I am requesting that the reporting of this information be removed, blocked, and deleted within 4 business days from the receipt of this letter. Account Name: ******************* Account Number: **************Sincerely,********************.

**12/12/2023[8]**

---

[5] https://www.bbb.org/us/tx/dallas/profile/collections-agencies/procollect-inc-0875-19001914/complaints?page=2 Last visited May 22, 2024.

[6] https://www.bbb.org/us/tx/dallas/profile/collections-agencies/procollect-inc-0875-19001914/complaints?page=6 Last visited May 22, 2024.

[7] *Id*.

[8] https://www.bbb.org/us/tx/dallas/profile/collections-agencies/procollect-inc-0875-19001914/complaints?page=9  Last visited May 22, 2024.

I recently checked my credit report and noticed that I am a victim of identity theft. There are several accounts on my credit report that I am not reliable for and I recently filed a report for identity theft. If you would please have this account deleted from my report as soon as possible. Thanks!

**11/9/2023[9]**

I did not authorize or recall any relations with this company; I am not liable for this account. This account continues to be deleted and added back.I HAVE NEVER DONE BUSINESS WITH THIS AGENCY Provide a copy of my signature. Cease any credit bureau reporting asap. This is a demand! This PRO COLLECT account was a result to identity theft, this account was sold to a third party and I have not provided written instruction to furnish - 15 U.S.C **** Section 604 A Section 2. By law, if identified as unknown/theft, you company MUST delete within 4 business days. Thank you so much for your prompt attention to this matter.

**4/5/2023[10]**

They put something on my Credit Report from November 2022. The Original Debt was from an apartment complex in a city I used to live. But I never lived in that complex. There is a problem with their claim. I have been in Asia, for work, since 2018. I have a Passport that shows I have not even been in ******* since 2018 I think they need to review whomever they buy Information from. I don't even think they got debt from the original source, where I never lived. Nobody even tried to collect this from me and it is supposedly in the hands of attorneys now? They must know they bought bad debt and they are trying to get a court judgement ASAP to legitimize the fraud. I have already disputed this with the ********************* and they removed it within the afternoon. Update 3-28-2023 I contacted them and got a collector 3 times. When I tried to offer proof of misidentification, they hung up on me each time. I contacted the original creditor and they have no record of anyone with my name. She referred me to her corporate office. I called them and they have record of someone with a name that sounds like mine but spelled differently and with a totally different middle name. So I called Procollect with this new information and asked to speak with a Supervisor. The Supervisor and I agreed that I should E-mail my ID. 2 Follow-up emails get no reply. It is really odd when I have to chase a collection company down. Identity theft is a crime and I would like to know how this happened and who is responsible? I suspect they will try to sell the fraudulent account to another ************************ Agency.

---

[9] https://www.bbb.org/us/tx/dallas/profile/collections-agencies/procollect-inc-0875-19001914/complaints?page=12  Last visited May 22, 2024.

[10] https://www.bbb.org/us/tx/dallas/profile/collections-agencies/procollect-inc-0875-19001914/complaints?page=26 Last visited May 22, 2024.

16. Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA); *See also Edeh v. Midland Credit Mgmt., Inc.*, 748 F.Supp.2d 1030 (D. Minn. 2010) *aff'd*, 413 F. App'x 925 (8th Cir. 2011) ("[I]nformation about whether Midland has previously been sued, sanctioned, or found liable for violating the TCPA is relevant to whether Midland's TCPA violation was knowing or reckless.").

## JURISDICTION & VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. §§ 1681p, 1692k(d), and 28 U.S.C § 1331.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

19. Defendant attempted to collect on the underlying fraudulent account described below from Dallas, Texas.

20. ProCollect received notice of Plaintiff's disputes in Dallas, Texas.

21. ProCollect responded to Plaintiff's indirect disputes from Dallas, Texas.

## PARTIES

22. Plaintiff Michael Nuckolls is an adult individual and resides in Lake Mills, Wisconsin.

23. Plaintiff is a "consumer" as defined by 15 U.S.C. §§ 1681a(c) and 1692a(3).

24. Defendant ProCollect is a Texas corporation with its principal place of business located at 12170 N. Abrams Rd., Ste 100, Dallas, Texas 75243.

25. ProCollect is also a "debt collector," as defined by 15 U.S.C. § 1692a(6). Defendant conducts business by way of attempting to collect debts in this District.

26. ProCollect is also a "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## FACTUAL ALLEGATIONS

27. Plaintiff is a victim of identity theft.

28. In or around 2020 or 2021, an impostor used some of Plaintiff's personal identifying information ("PII") to apply for and open a lease with the Soneto on Western Apartments ("Soneto") located in Texas.

29. The impostor did not pay the lease, and Soneto assigned the past due balance to collections with ProCollect.

30. ProCollect credit reported the account ending in 4943 ("Account") as a collection account, with a past due balance of $ 17,320 and delinquent since March 2021.

31. ProCollect also credit reported the Account belonged to Mr. Nuckolls.

32. Plaintiff did not apply for or authorize someone on his behalf to apply for a lease with Soneto.

33. Plaintiff did not receive any goods, benefits, or services from Soneto in connection with the Account.

34. Mr. Nuckolls discovered the Account when ProCollect called him from its Dallas office and demanded payment on the Account.

35. Plaintiff explained to ProCollect that the Account did not belong to him as he lived in Wisconsin and had never lived or rented an apartment in Texas.

36. Notwithstanding, ProCollect continued its collection efforts and credit reported the Account belonged to Plaintiff.

37. Plaintiff disputed the account to consumer reporting agencies ("CRAs").

38. Plaintiff made no less than fourteen (14) disputes concerning the Account to the CRAs.

39. In support of his disputes, Plaintiff included his PII, legible copies of his driver's license, Lake Wells Police Department Report, and an Identity Theft Report from the Federal Trade Commission.

40. Plaintiff also included information sufficient for ProCollect not to be able to verify the Account belonged to him, including but not limited to signature exemplars and law enforcement information.

41. Notwithstanding, ProCollect verified the Account belonged to him and continued credit reporting the Account.

42. At all times pertinent hereto, ProCollect was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of ProCollect.

43. As a result of ProCollect's violative conduct, Plaintiff suffered multiple distinct injuries, including but not limited to adverse credit action, damage to his credit reputation, out-of-pocket expenses, loss of time and emotional distress.

**COUNT ONE – VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681s-2(b)(1)(A)**

44. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

45. On at least one occasion within the past two years, by example only and without limitation, ProCollect violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to reasonably investigate Plaintiff's disputes received from CRAs.

46. Based on the way the CRAs responded to Plaintiff's disputes, representing that "verified" the supposed accuracy of its reporting, Plaintiff alleges that at least one CRA did in fact forward Plaintiff's dispute via an Automated Consumer Dispute Verification ("ACDV") to Defendant.

47. Defendant understood the nature of Plaintiff's disputes when it received the ACDVs from the CRA.

48. Notwithstanding the above, ProCollect follows its standard and systemically unlawful process when it receives an ACDV dispute notice from a CRA.

49. Upon receipt of an ACDV from a CRA, basically, all ProCollect does is review its own internal computer screens for the account level information and repeat back through the ACDV system, known as "e-OSCAR", the same information Defendant already credit reported to the CRAs.

50. When ProCollect receives a consumer dispute through e-OSCAR, it does not conduct a substantive review of any sort to determine whether the information already in its computer system is accurate.

51. In other words, ProCollect did not perform a systemic or thorough investigation of Plaintiff's disputes received from a CRA.

52. ProCollect did not conduct any handwriting analysis and compare Plaintiff's signature on his dispute letters with the apartment lease or other documents from Soneto.

53. ProCollect did not contact third parties, such as the original creditor, who may have information about the disputed Account or Plaintiff, or both.

54. Similarly, upon information and belief, ProCollect did not contact law enforcement by phone, e-mail, fax, letter or by open records request to validate or otherwise invalidate Plaintiff's identity theft claim. Had it, then Defendant would have discovered Plaintiff made a valid fraud claim to law enforcement.

55. ProCollect negligently violated the FCRA when it failed to reasonably investigate each dispute provided to it by a consumer reporting agency in connection with the Account.

56. In the alternative, ProCollect willfully violated the FCRA when it failed to reasonably investigate each dispute provided to it by a consumer reporting agency in connection with the Account.

57. As a result of ProCollect's violations of the FCRA, Plaintiff has been damaged as set forth above.

58. ProCollect's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, making it liable to Plaintiff for statutory and punitive damages, plus attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

59. In the alternative, ProCollect's conduct was negligent, entitling Plaintiff to recover actual damages, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681o.

## COUNT TWO – VIOLATIONS OF FCRA
## 15 U.S.C. § 1681s-2(b)(1)(B)

60. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

10

61. The FCRA requires ProCollect to review all relevant information provided to it by a CRA in connection with its investigation of disputed information.

62. In support of his disputes, Plaintiff provided at least one CRA with a copy of his driver's license. Upon information and belief, ProCollect did not consider Mr. Nuckoll's driver's license and the driver's license used by the impostor in connection with any FCRA investigation.

63. Likewise, ProCollect failed to consider the Federal Trade Commission Identity Theft Report or Lake Wells Police Report, or both.

64. Notwithstanding, in connection with any FCRA investigation of the Account, Defendant failed to consider the above-described information, verified the Account belonged to Plaintiff and continued credit reporting the Account to the CRAs.

65. ProCollect negligently violated the FCRA when it failed to review all relevant information provided to it by a CRA in connection with its investigation of the Account.

66. In the alternative, ProCollect willfully violated the FCRA when it failed to review all relevant information provided to it by a CRA in connection with its investigation of the Account.

67. As a result of ProCollect's violations of the FCRA, Plaintiff has been damaged as set forth above.

68. ProCollect's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(B) was willful, making it liable to Plaintiff for statutory and punitive damages, plus attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n. In the alternative, ProCollect's conduct was negligent, entitling Plaintiff to recover actual damages, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. §§ 1681s-2(b)(C-E)**

69. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

70. The FCRA requires ProCollect to include a notation that an account is in dispute and to correctly report results of an accurate investigation to each CRA.

71. ProCollect violated the FCRA when it failed to add the "XB" or "XC" Compliance Condition Code in its responses to the CRA disputes, which would have indicated the Account was in dispute by Plaintiff.

72. ProCollect knew Plaintiff disputed the Account through his indirect communications with the CRA and directly to ProCollect.

73. Mr. Nuckolls's disputes were bona fide as the Account was opened by an impostor and without Plaintiff's knowledge or permission.  Plaintiff did not receive any goods, benefits, or services in connection with the Account.

74. As a result of ProCollect's violations of the FCRA, Plaintiff has been damaged as set forth above.

75. ProCollect's conduct in violating 15 U.S.C. §§ 1681s-2(b)(1)(C-E) was willful, making it liable to Plaintiff for statutory and punitive damages, plus attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

76. In the alternative, ProCollect's conduct was negligent, entitling Plaintiff to recover actual damages, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681o.

### COUNT 4 – VIOLATIONS OF THE FDCPA
### 15 U.S.C. §§ 1691e and f

77. At all times material herein, Plaintiff was a "consumer" as defined by 15 U.S.C. § 1692a(3), since he is a natural person allegedly obligated to pay a consumer debt.

78. At all times material herein, Plaintiff's alleged debt was a "debt" as defined by 15 U.S.C. § 1692a(5).

79. At all times material herein, ProCollect was a "debt collector" as defined by 15 U.S.C. § 1692a(6).

80. ProCollect falsely stated Mr. Nuckolls owed a debt on the Account.

81. As detailed above, Mr. Nuckolls did not have any connection to the Account because, upon information and belief, the Account was opened by an impostor.

82. Despite Plaintiff's repeated disputes received by ProCollect from various CRAs that the Account did not belong to him, Defendant continued to claim that the Account belonged to Plaintiff and that he owed the debt.

83. ProCollect's credit reporting of the Account was a false representation of the character, amount, and legal status of a debt in violation of the FDCPA. 15 U.S.C. § 1692e(2)(A)(10).

84. ProCollect continued to claim Plaintiff owed the debt for the Account after his disputes was also a false representation and deceptive practice in violation of the FDCPA. 15 U.S.C. § 1692e.

85. ProCollect repeatedly used unfair or unconscionable means, or both, to collect or attempt to collect the debt, specifically the disputed collection Account, from Plaintiff.

86. ProCollect did so even though Plaintiff doesn't owe the debt because it is the result of fraud, in violation of 15 U.S.C. § 1692f.

87. ProCollect's violations of the FDCPA caused Plaintiff to worry about his financial situation and the impact on his credit, as well as stress and frustration.

88. Plaintiff also lost time because of his efforts to investigate why Defendant alleged he owed a debt on the Account, researching how to dispute the debt, writing disputes, and traveling to and from the post office concerning the disputes.

89. As a result of ProCollect's failure to comply with the requirements of the FDCPA, Plaintiff suffered actual damages, described more fully above, for which he seeks actual, statutory damages, in an amount to be determined by the jury.

90. Accordingly, Mr. Nuckolls is entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against ProCollect pursuant to 15 U.S.C. § 1692k.

## JURY DEMAND

91. Plaintiff requests a jury trial on all claims.

## PRAYER

92. WHEREFORE, Plaintiff prays for relief as follows:

## **PRAYER**

Wherefore, Plaintiff prays for judgment against Defendant as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and
4. Attorneys' fees and costs.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

On the Third Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and
4. Attorneys' fees and costs.

On the Fourth Claim for Relief:

1. Actual damages to be determined by the jury;
2. Statutory damages to be determined by the jury; and
3. Attorneys' fees and costs.

Dated:      May 22, 2024

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins
(attorney-in-charge)
TX BAR NO. 24088777
**THE ADKINS FIRM, P.C.**
8150 N. Central Expy., Suite 1000
Dallas, Texas 75206
(214) 974.4030 Main Telephone
MicahAdkins@ItsYourCreditReport.com
*COUNSEL FOR PLAINTIFF*
*MICHAEL NUCKOLLS*